IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PAUL BARNEY, | ) |
| | ) |
|        Plaintiffs, | ) |
| | ) |
| vs. | )   Case No.   13-cv-552-SCW |
| | ) |
| DENNIS LARSON, | ) |
| | ) |
|        Defendant. | ) |

**MEMORANDUM AND ORDER**

**WILLIAMS, Magistrate Judge:**

### I.   Introduction

Before the Court is Defendant Larson's Motion for Summary Judgment for Failure to Exhaust Administrative Remedies (Docs. 31 and 32). Plaintiff has filed a Response (Doc. 36) in opposition to the motion. Defendant has filed a Reply (Doc. 37). Plaintiff has filed an Addendum (Doc. 38) to his responsive brief. Based on the following, the Court **GRANTS** Defendant's motion for summary judgment (Docs. 31 and 32).

### II.   Findings of Fact

On June 11, 2013, Plaintiff brought a two count Complaint against Dr. Dennis Larson for deliberate indifference and unwanted touching (Doc. 1). Specifically, Plaintiff alleges that he suffers from a sciatic nerve condition for which he has previously been provided Naproxen for relief, but since being incarcerated Larson has refused to provide Plaintiff with a prescription for Naproxen (Doc. 8). Plaintiff also alleges that on April 9, 2013, Plaintiff saw Larson for his condition and Larson had Plaintiff drop his pants and rubbed Plaintiff's thighs up to his private parts in an inappropriate manner (*Id.*).

On October 23, 2013, Defendant Larson filed a motion for summary judgment based

on failure to exhaust administrative remedies (Docs. 31 & 32). The records indicate that Plaintiff submitted a grievance to his counselor regarding his sciatic nerve which was returned to him on March 11, 2013 (Doc. 32 Ex. 1 at p. 7). Plaintiff also submitted another grievance to his counselor on March 18, 2013 regarding his Naproxen prescription (*Id.*). That grievance was returned to him on March 25, 2013 with a response from the Health Care Unit indicating that the grievance was a duplicate of a previous grievance (*Id.*). An affidavit from the custodian of the grievance records indicated that there were no grievances on file at Big Muddy River Correctional Center from Plaintiff (Doc. 32 Ex. 2 at p. 2). Further, the ARB records found no grievances regarding Plaintiff's sciatic nerve or inappropriate touching from Larson (Doc. 32 Ex. 3 at p. 2).

In Plaintiff's response, Plaintiff stated that he filed an emergency grievance on February 19, 2013. He also stated that he submitted a request slip with the warden on February 22, 2013 regarding his failure to receive Naproxen for his sciatic pain (Doc. 36-2). Plaintiff then stated that his emergency grievance, which was reviewed by the Health Care Unit and submitted to his counselor, was returned to him on March 11, 2013. Plaintiff argues that he filed an "appeal of the counselor's response" along with the original grievance with the grievance officer on March 12, 2013 but that the grievance officer never processed the grievance and instead it ended up in the possession of the counselor on March 18, 2013. Plaintiff argues that the counselor's actions in not submitting the grievance to the grievance officer thwarted his attempts at exhausting his grievance. Plaintiff states that he finally saw Dr. Larson on April 9, 2013. Plaintiff has filed an addendum to his response, indicating that he has recently had trouble obtaining a sick call pass to see Dr. Larson and filed a grievance on the matter on January 5, 2014 (Doc. 38).

### III. Conclusions of Law

Summary Judgment is proper if the pleadings, discovery materials, disclosures, and

affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, **604 F.3d 464, 467 (7th Cir. 2010).** Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). **42 U.S.C. §1997e(a).** That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* **(emphasis added).** The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, **438 F.3d 804, 809 (7th Cir. 2006) (noting that '[t]his circuit has taken a strict compliance approach to exhaustion").** Exhaustion must occur before the suit is filed. *Ford v. Johnson*, **362 F.3d 395, 398 (7th Cir. 2004).** Plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, **286 F.3d 1022, 1025 (7th Cir. 2005).** Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, **438 F.3d at 809.**

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, **544 F.3d 739, 740-41(7th Cir. 2008).** Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Court set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then

> determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over.   (3)If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* **at 742.**

A.      **Exhaustion Requirements Under Illinois Law**

As an inmate confined within the Illinois Department of Corrections, Plaintiff was required to follow the regulations contained in the Illinois Department of Correction's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims.  **20 Ill. Administrative Code §504.800** *et seq.*  The grievance procedures first require inmates to speak with the counselor about their complaint.  **20 Ill. Admin. Code §504.810(a).**  Then, if the counselor does not resolve the issue, the inmate must file a grievance form directed to the Grievance Officer within 60 days of the incident.  *Id.*  The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is subject of or who is otherwise involved in the complaint.  The provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

**20 Ill. Admin. Code §504.810(a)(b).**  "The Grievance Officer shall [then] consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer...[who]shall advise the offender of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances."  **20 Ill. Admin. Code**

**§504.830(d).**  If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the Administrative Review Board ("ARB").  The grievance procedures specifically state, "[i]f after receiving the response of the Chief Administrative Officer, the offender still feels that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director within 30 days after the date of the decision.  Copies of the Grievance Officer's report and the Chief Administrative Officer's decision should be attached."  **20 Ill. Admin. Code §504.850(a).**  "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations."  **20 Ill. Admin. Code §504.850(e).**  "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances.  The offender shall be sent a copy of the Director's decision."  **20 Ill. Admin. Code §504.850(f).**

The grievance procedures do allow for an inmate to file an emergency grievance.  In order to file an emergency grievance, the inmate must forward the grievance directly to the Chief Administrative Officer ("CAO") who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis.  **20 Ill. Admin. Code §504.840(a).**  If an inmate forwards the grievance to the CAO as an emergency grievance, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him which course he has decided is necessary after reading the grievance.  **20 Ill. Admin. Code §504.840(b).**  Once the CAO has informed the inmate of his decision, the inmate may then appeal that decision to the ARB on an expedited basis.  **20 Ill. Admin. Code §504.850(g).**

**B.     Analysis**

Here, the Court finds that Defendant Larson is entitled to summary judgment because Plaintiff failed to exhaust his administrative remedies against him. Plaintiff maintains that he submitted an emergency grievance on February 19, 2013 which was returned to him by his counselor on March 11, 2013. The cumulative counseling summary reflects that a grievance regarding his sciatic nerve was returned to him on March 11, 2013 (Doc. 32 Ex. 1 at p. 7). Plaintiff also states that he then tried to submit an appeal for that grievance to the grievance officer but that it ended up in the hands of his counselor on March 18, 2013, instead of the grievance officer. The cumulative counseling summary also reflects that a grievance regarding his prescription, or lack thereof, for Naproxen was received by his counselor on March 18 and returned to him on March 25, 2013. Plaintiff claims that the counselor returning his appeal and not submitting it to the grievance officer thwarted his efforts to exhaust his claims.

However, all of this occurred prior to Plaintiff meeting with Dr. Larson. Plaintiff, himself, states in his response that he was seen by Dr. Larson on April 9, 2013. Plaintiff's Complaint even indicates that he did not see Dr. Larson until April 9, 2013, at which time Larson inappropriately touched him. There is no evidence in the record that his February and March grievances dealt with Dr. Larson, as Plaintiff had not seen Larson at that time. Plaintiff could not have grieved Dr. Larson's treatment in February or March when Plaintiff had yet to see him. Plaintiff has not pointed to any grievance that was submitted after his April 9 meeting with Dr. Larson, nor do any of the records reflect that he submitted a grievance after that date. Plaintiff's response indicates that he filed a request slip to the warden on April 10, 2013, but the request slip is not a grievance. His addendum points to a grievance from January 5, 2014, but that was for a failure to be seen by the doctor in November of 2013 and, in any event, was filed after Plaintiff filed his Complaint. A plaintiff's claims

must be fully exhausted prior to filing suit.  *Perez v. Wisconsin Dept. of Corrections*, **182 F.3d 532, 534-35 (7th Cir. 1999);** *Ford v. Johnson*, **362 F.3d 395, 398 (7th Cir. 2004).**  Thus, there is no evidence that Plaintiff filed a grievance regarding Larson's treatment prior to filing his suit and Plaintiff has, accordingly, failed to exhaust his administrative remedies against Larson.

### IV.  Conclusion

The Court **FINDS** that Plaintiff has failed to exhaust his claims as to Defendant Larson and Dennis Larson is entitled to summary judgment on Plaintiff's deliberate indifference and improper touching claims.  Accordingly, the Court **GRANTS** Larson's motion for summary judgment (Docs. 31 & 32) and **DISMISSES without prejudice** Plaintiff's claims against Larson.  As no further claims remain for trial, the Court **DIRECTS** that judgment be entered accordingly.

**IT IS SO ORDERED**.
DATED: May 2, 2014.

*/s/ Stephen C. Williams*
STEPHEN C. WILLIAMS
United States Magistrate Judge